Exhibit B

Angel Abreu
David County Jail
Farmington, UT 84025

RE: GRAMA request
October 26, 2021

Mr. Abreu,

On October 18, 2021 I received your GRAMA request dated October 26, 2021. As you are aware your request was as follows:

*"ANY AND ALL JAIL REPORTS/RECORDS FROM 9/26/20 INCIDENT WHEN MY STOMACH WAS CUT OPEN DURING CELL EXTRICATION ALONG WITH OFFICER REPORTS."*

The reports regarding the incident on 9/26/2020 are being provided to you along with this response letter.

The reports have been redacted per Utah Code Annotated 63G-2-106(4) which deal with the records of a governmental entity regarding security measures and procedures designed for the protection of persons or property are not subject to GRAMA, and Utah Code Annotated 63G-2-302(2)(d) which deal with the unwarranted invasion of personal privacy.

Per Utah Code Ann. 63G-2-201(8)(d) In response to a request, a governmental entity is not required to fulfill a person's records request if the request unreasonably duplicates prior records requests from that person.

On January 25, 2021 I filled this same records request for you. This request will not be filled again, so I suggest that you retain these records.

The standard fee for GRAMA requests is $10.00 per report. I have filled several requests for you at the inmate copy fee of $0.15 per page. As my response to your previous GRAMA indicated, "you will be billed the Standard fee of $10.00 per record for any subsequent GRAMA requests", your account has been billed the $10.00 records fee.

You have the right according to Utah Code Ann. 63G-2-401 to appeal the partial denials (redactions) contained herein by filing a notice of appeal with the Chief Administrative Officer no later than 30 days after the date of issuance of this response. Your appeal should be addressed to:

Commissioner Bob Stevenson
Davis County Commission Chairperson
PO Box 618



This fulfills this GRAMA records request.


L. Stubbs
Davis County Sheriff's Office
Jail Records Division

INMATE COPY

Angel Abreu
David County Jail
Farmington, UT 84025

RE: GRAMA request
October 26, 2021

Mr. Abreu,

Corrected 10/29/21

On October 18, 2021 I received your GRAMA request dated October 12, 2021. As you are aware your request was as follows:

*"ANY AND ALL JAIL REPORTS/RECORDS FROM 9/26/20 INCIDENT WHEN MY STOMACH WAS CUT OPEN DURING CELL EXTRICATION ALONG WITH OFFICER REPORTS."*

The reports regarding the incident on 9/26/2020 are being provided to you along with this response letter.

The reports have been redacted per Utah Code Annotated 63G-2-106(4) which deal with the records of a governmental entity regarding security measures and procedures designed for the protection of persons or property are not subject to GRAMA, and Utah Code Annotated 63G-2-302(2)(d) which deal with the unwarranted invasion of personal privacy.

Per Utah Code Ann. 63G-2-201(8)(d) In response to a request, a governmental entity is not required to fulfill a person's records request if the request unreasonably duplicates prior records requests from that person.

On January 25, 2021 I filled this same records request for you. This request will not be filled again, so I suggest that you retain these records.

The standard fee for GRAMA requests is $10.00 per report. I have filled several requests for you at the inmate copy fee of $0.15 per page. As my response to your previous GRAMA indicated, "you will be billed the Standard fee of $10.00 per record for any subsequent GRAMA requests", your account has been billed the $10.00 records fee.

You have the right according to Utah Code Ann. 63G-2-401 to appeal the partial denials (redactions) contained herein by filing a notice of appeal with the Chief Administrative Officer no later than 30 days after the date of issuance of this response. Your appeal should be addressed to:

Commissioner Bob Stevenson
Davis County Commission Chairperson
PO Box 618

INMATE COPY

Farmington, UT 84025
This fulfills this GRAMA records request.


L. Stubbs
Davis County Sheriff's Office
Jail Records Division

INMATE COPY



# 𝔇𝔞𝔳𝔦𝔰 𝔆𝔬𝔲𝔫𝔱𝔶 𝔆𝔬𝔪𝔪𝔦𝔰𝔰𝔦𝔬𝔫

Commissioner Randy B. Elliott        Commissioner Lorene M. Kamalu        Commissioner Bob J Stevenson

December 7, 2021

Angel Abreu
Davis County Jail
Farmington, UT 84025

### Re: *Notice of Decision Regarding Appeal of GRAMA Decision*

Dear Mr. Abreu:

This **Notice of Decision Regarding GRAMA Appeal** is made in response to your *Appeal of GRAMA Denial* (the "Appeal") that was received in our office on December 1, 2021.

Per our records, the Davis County Sheriff's Office received a GRAMA request from you on October 18, 2021 regarding an incident that happened on September 26, 2020. The Sheriff's Office responded to your request on October 26, 2021.

Please note that 30 days are allowed to appeal a GRAMA denial. Because your appeal of the partial denials (redactions) of information was not received in our office until December 1, 2021, we are unable to accept your appeal.

Sincerely,

Bob J Stevenson
Davis County Commission Chair

Davis County

Commission          Chairperson

Ankel Christopher Abreu

                                    Notice of Appeal to

        Subject                 Appeal the Partial Denials

To:                                 (Redactions)

    Bob Stevenson

    Commissioner

In response to Jail Records Division RE: LRAMA request letter Abreu does according to Utah Code Ann. 63I-2-401 reserve the right to appeal the partial denials (redactions) mentioned in this Notice of Appeal. The reasons thereof shall be outlined henceforth as follows:

Mr. Abreu is requesting unredacted copies, according to 63Co-2-101 to be all information regarding the incident on 9/26/2020 where in which he was cut open at the stomach during a poorly executed, unprofessional, and inorganized cell extraction in which an unknown amount of officers, jail employees, medical staff, and other individuals were involved. This includes the numbers of CERT team and any ranking officers in charge or who had any amount of involvement in the mentioned incident currently. "The same officials are incharge... and hence the same conditions likely will apply." Oliver v. Scott 276 F.3d 736, 741 (5th Cir. 2002)

First, the Jail Records Division relies on Utah Code Ann. 63G-2-1006 to support their argument which states, "The records of governmental

Notice of Appeal Page 2

entity or political subdivision regarding security measures designed for the protection of the persons or property, public or private, are not subject to this chapter." These records include '(4) Security procedures;

As the subject of these records Abreu is not concerned with compromising security procedures. Abreu is concerned with the accumulation of ALL accurate information. A unredacted copy of the original incident reports pertaining to the mentioned event does not compromise security procedures. As in regards to this event it refers to the CERT extraction that took place that day which Abreu was injured during said extraction by CERT officers. Abreu is not requesting the CERT manual, training courses, or where the officers live. Nor is Mr. Abreu requesting any information about what these officers do when they are not wearing their badge and uniform. Abreu is not requesting a blueprint of the jail or the materials used to construct the jail. The information that is being requested could not lead to a compromisation of the facilities security nor could the information allow an inmate to prepare a defense against an extraction. A inmate extraction is EMMENENT once CERT is involved. Furthermore, if not for Abreu's want of relief, to clarify relief does not solely mean a monetary quivelent but also includes an injunction order, a declaration that Abreu's rights were violated, money damages, costs, and anything else Mr. Abreu feels is fair, or the fact that he was injured to a degree that required immediate hospitalization these records would have been available to Abreu unredacted and in original form for is in-house IDHO hearing for his write-up. But since this issue became more than just a routine cell extraction the reports become redacted. The Davis County Correctional Facilities desire of a maintained

## Notice of Appeal Page 3

redacted copy would appear to be purposeful in a attempt to hide information and manipulate truths. It is the right of all persons involved, especially the subjects, that all the information be readily accessible whether it solidifies Mr. Abreu's injustice or validates the jails viewpoints. Plus, the security procedures put in place to "protect persons" are referring to the procedures put in place to protect Mr. Abreu. The information requested pertains only to the officers disciplinary reports and the officers involved as well as the subject in the claim. Murray City v. Maese 251 P.3d 843 "We note that Maese has received exactly what he asked for in his GRAMA request. Specifically, Maese petitioned the city for unredacted copies of police discipline reports." Though Mr. Maese claims of injunction were moot over-all, which Abreu's are not because it affects his substantial rights under US. Constitutions 8th amendment, being excessive force, amongst other violations due to this incident and the conditions those violations happened under still exist as the same officials are still in charge. Mr. Maese still recieved unredacted copies of reports under the Gov't Records Access Management Act (GRAMA) see Utah Code Ann. G36-2-101 to 109

Second, the Jail Records Division uses Utah Code Ann. 63b-2-302(2)(d) which states "The following records are private if properly classified by a gov't entity... other records containing data on individuals the disclosure which constitutes a clearly unwarranted invasion of personal privacy." The request for a unredacted copy could not and should not be considered an invasion of personal privacy as officers are public servants, specially the correctional officer in a county jail that houses the upright citizens of utah that have not been found guilty of a crime, such as Mr. Abreu. And therefore information pertaining to their

Notice of Appeal Page 4

stobs is public information. Also, the unredacted incident reports should only have the last names of those involved and at most their first initial. Abreu is not requesting addresses, phone numbers, information regarding families, or any of the such. Abreu is not even requesting the records to have any first initials. Abreu s only requesting the information as to identify each role of each officer that participated. Additionally, all officers that are employed at the county jail wear their name badges on display with their last names and they also have their badge numbers on display when in uniform as both are required. They also wear a C.E.R.T. pin, when they are on the team, on display when n uniform. Also officers display their rank along with other insignia. An nmate or any being in view of these officers and those involved in the mentioned incident would have access to the information regarding their ast names rank, and insignia. Also it is important to note that Abreu an recall six of the officers names from his memory of the events and wo of the nurses. The names of the officers are CPT. Meldrum, SGT. Bear, LT. Hutchinson, CPL. Nix, Deputy Rummel, and Deputy Terrel.

In Conclusion, the unredacted copies should be released under Utah Code Ann. 63G-2-301(2)(i) Public Records includes "data on individuals that would otherwise be private under this chapter if the individual who is the subject of record has given the governmental entity written ermission to make the records available to the public." Abreu is the ubject of record along with all the other information included in this Notice of Appeal. Again, Abreu is requesting the unredacted original pies of what was stated in his GRAMA request and what was lready given to him redacted.

Please excuse (if) any violations of time constraints as there is a ffer of time between when Mr. Abreu recieved the letter with redacted

Notice of Appeal page 5

copies which was the day his inmate trust account was charged for the GRAMA and when it was actually mailed to when Abreu dated the GRAMA request (copies included). Also with the appeal due date falling close to Thanksgiving the time it takes jail staff to inspect and send out mail paired with postal delays outside of the jail may take longer than usual. Abreu asks that this Notice of Appeal be accepted and a final decision be made.

Sincerely,

Angel Abreu

CERTIFICATE of SERVICE

I certify that on November 26, 2021 a copy of the above notice of appeal was served, by first class U.S. Mail, fax, email, or hand-delivery, to Commissioner Bob Stevenson at

Davis County Commission Chairperson
PO Box 618
Farmington, UT 84025

Dated: November 26, 2021

SIGNATURE

VERIFICATION

I have read the foregoing NOTICE of appeal and hereby verify that the matters alleged therein are true, except to matters alleged on information and belief, and, as to those, I believe them to be true. I certify under the penalty of perjury that the foregoing is true and correct.

Executed at Davis County, Utah on November 26, 2021

ANGEL C. ABZEU
DAVIS COUNTY JAIL
PO BOX 130
FARMINGTON, UT 84025

Angel Abreu
Davis County Jail
800 W State Street
Farmington, UT 84205

December 10, 2021

Mr. Abreu,

Davis County Sheriff's Office has revisited the practice of removing Deputy last names and rank from records that we will be provided to requesters from now on.

As such, I am providing you with a copy of the records that you had previously requested, in the now current format to include Deputy last names and rank. These records are being provided at no charge and accompany this Supplemental Response letter.

Best regards,

L. Stubbs
Davis County Sheriff's Office
Jail Records Division

**INMATE COPY**



# DAVIS COUNTY SHERIFF'S OFFICE
Jail Incident Report

Jail Incident: 1281
Nature: VIOLATION
Location:
Clearance: Information Only
Disposition: (**/**/**)

Time Reported: 19:18:32 09/26/20
Event Beginning: 19:19:14 09/26/20
Ending: 19:19:16 09/26/20
Log Event: -

Officers Involved:

Inmates Involved:

398403 ABREU ANGEL

## NARRATIVE
Inmate ABREU, Angel (Name# 398403) refused to move cells. CERT was called in to assist.

## SUPPLEMENTAL:
On 09/26/2020 I, ███████ was working in ███████ with ███████. At approximately 1916 Sgt. ███████ called over the radio for ███████ to call for an ambulance due to an inmate having full body lacerations. I called dispatch then 911 since it was after business hours. The ambulance arrived at approximately 19:25 and left with the inmate at 19:31.

## SUPPLEMENTAL:
On 9/26/2020 at 1910 hours I was assigned as Floor Deputy over Pod 6.

At approximately 1916, Nurse ███████ called over the radio for the Watch Commander to activate EMS for multiple lacerations on Abreu's body. At approximately 1918 CERT exited Quebec Housing Unit with Abreu on a gurney. 1920 Sergeant ███████ declared Quebec Housing Unit to be a crime scene and instructed me to keep a log of who entered and exited the unit. The log is reflected as follows:
1910-Members of the CERT team entered Quebec Housing Unit
1912-CERT members entered Quebec
1915-EMS Activated by Nurse ███████
1918-CERT team exited Quebec Housing Unit
1920-Quebec Housing Unit declared a Crime Scene by Sergeant ███████
1941-L Deputy ███████, entered Quebec Housing Unit to complete a safety and security round.
2034- Farmington PD Detective ███████, Farmington Police Officer ███████, Crime Lab Technician ███████, Sergeant ███████ and Corporal ███████ entered Quebec Housing Unit


INMATE COPY

2035-I, Deputy ██████ entered Quebec Housing Unit for safety and security rounds
2038-Sergeant ██████ entered Quebec Housing Unit
2042-Quebec Cell opened, Crime Scene entered for photos.
2044-Sergeant ██████ exited Quebec Housing Unit
2056-Officer ██████, Detective ██████ Crime Lab exited cell ██████
2058-Quebec Cell ██████ declared to be good to cleaned
2059-Officer ██████, Detective ██████, Crime Lab, Sergeant ██████ Corporal ██████ and myself exit Quebec Housing Unit.

**SUPPLEMENTAL:** ██████
On the night of 9/26/2020, ██████

The CERT team entered Quebec and talked with Abreu. At this time Sgt. ██████ asked me to call ██████ Watching Sgt. ██████ and the CERT team, Sgt. ██████ and CERT entered the cell. Over the speaker all I could hear was unidentified grunting.

At 1916, Sgt. ██████ called over the radio for ██████ to call for an ambulance and asked me to call ██████ to confirm that they were doing so. At approximately 1918 CERT exited Quebec with Abreu on the gurney.

At 2034 Farmington PD Detective ██████ Farmington Police Officer ██████ Crime Lab Technician ██████, Sgt. ██████ and Cpl. ██████ entered Quebec housing unit. They left around 2059.

At approximately 2121, Deputy ██████

**SUPPLEMENTAL:** ██████
The following items were inventoried from inmate Abreu's cell:
1 radio with 2 batteries
1.25 bags of Whey Protein
1 prayer rug
1 pillow (discarded, no name on pillow)
3 bowls
1 clear cup
2 green toothbrushes
2 tubes of toothpaste
2 bars of soap
2 bottles of vitamins
1 bottle of baby powder
2 bottles of lotion
1 tube triple antibiotic ointment
1 tube of hair gel
1 stick of deodorant
1 face mask
1 bag of safety dental floss
1 bottle of eye drops
1 bottle of lip balm
4 pencils
13 magazines with name on them
13 books with name on them
3 large yellow envelopes marked legal mail with several papers in each
2 manilla folders with several miscellaneous papers
2 blue folders with several miscellaneous papers, envelopes, pictures
1 ziploc baggie with several pictures of family
Several pictures sent via email

INMATE COPY

4 composition notebooks, 1 of which contained several miscellaneous papers
Several large stacks of papers from court proceedings, Utah laws and other miscellaneous papers

███████████

**SUPPLEMENTAL:** ███████
Abreu began flooding his cell and placing soap on the floor. Abreu then covered up his window and
started moving water out from under his cell door onto the walkway of the tier. Sgt. ███████ and
Cpl. ███████ entered Quebec and turned off the water to prevent a further mess from being created. As
of 1500hrs Abreu is still non compliant and yelling fuck you bitch and fucking pussy to me as I have
conducted rounds.

**SUPPLEMENTAL:** ███████
On 09/26/2020 I received notice that the CERT team would be moving Inmate ABREU, ANGEL 56119 to ███
█due to his behavior throughout the day. We were told that he was refusing to cuff up on his own to
be moved and also that he had poured liquids all over the floor as well as food.

███████████████████████████████████████

███████████████████████ We then went into Quebec and immediately
Inmates started chanting and yelling. Once we got up to Quebec ██ I observed liquid and food all
over the floor outside of the cell as well as a towel covering his window. Sergeant ███████ gave
him a warning that if he didn't submit to handcuffing force would be used. Inmate ABREU didn't
respond. Once the team was ready the door was opened. I saw Inmate Abreu by himself standing towards
the back of the cell with his hands covering his stomach/chest area. He didn't comply with our
requests of getting down on his stomach. He ended up with his buttocks on the bottom bunk and again
was told to get down on his chest. I had control of his left arm and once we had him on his stomach
he was handcuffed and leg shackled. Almost the entire time he was screaming about his stomach and
once we looked at his stomach Deputy ███████ requested an ambulance to repond due to a wound that
was bleeding. As we were carrying him out I couldn't help but notice all the water, slick floor,
noodles, tuna fish, and tuna fish packs all of the floor. He was carried down the stairs and placed
on a gurney and taken up to ███████ to the ambulance. ███████████████
███████████████████ During this time both Nurses
would check on him and confirm he was ok and breathing. Once we got him out in the vehicle sally we
cut his clothing off due to seeing alot of blood down by his waistline area. Paramedics checks his
leg area to ensure he wasn't bleeding from anywhere else. We then lifted Inmate Abreu off of our
gurney and placed him on Farmington Fires gurney. He was then taken to a local hospital due to the
severity of his wounds.

███████████████████████

Shortly after this happened Detective ███████ wih Davis County Sheriffs Office and also a Detective
███████ with Farmington Police came to take pictures of the scene and also ask questions, Deputy
███████ kept track of who was coming in and out of the crime scene.

Inmate ABREU, ANGEL came back from the hospital shortly after leaving and was taken into the ███████
███████ where a Detective ███████ from Farmington Police attempted to ask him questions. He
requested a lawyer and refused to answer any questions. He was then taken to the ███████ due to
his attempts at self harm (minor abrasions, and a larger laceration) that we noticed before he went
to the hospital. While in the ███████ he wanted to give us something he had up his rectum. Sgt
███ and I opened his cuffport and gave him the tissue he requested. After a few minutes he was able
to produce what looked like a two inch bundle. Sgt ███ and I opened it up out in ███████ and found
a silvertone ring and also 5 or 6 pieces of paper with phone numbers and addresses on them.

███████████████



**SUPPLEMENTAL:** ██████████

On September 26, 2020 at 1624 I received clearance from Cpt ████ that the the CERT team would be activated to assist in the movement of ABREU, Angel #398403 from ██████ Deputies ████ and ████████ were called in to help. Cpl ████ Deputy ████ Deputy ████ and I were already on shift. ████

At about 1920 the team entered Quebec housing unit and approached cell ████. The floor was covered in water, food and garbage coming from under the door of cell ████ ABREU, Angel 's cell. I gave the fair warning order to inmate ABREU to submit to search, handcuffing, and movement. The cell door was covered with a towel and no response was given to my order. I signaled for the door and the team entered. ABREU was straight back from the door when the team attached. I was ████ in entering the cell and observed blood on ABREU. ABREU resisted handcuffing but the team was able to secure his hands behind his back and leg shackles were applied. Deputy ████ called for a ████ meaning we needed paramedics to respond, I echoed to Nurse ████ that we needed to call the ambulance. ABREU was carried from the cell, down the stairs, and placed face down on the stretcher. ABREU was yelling calling us names, complaining about his stomach, and trying to kick while on the stretcher. Deputy ████ got on the stretcher to hold control of ABREU's lower legs, near his calves. ABREU claimed he didn't know how he was injured and even claimed that we stabbed him. ABREU was transported on the stretcher to ████ to meet the paramedics; during transport we stopped to place gauze on the wound, adjust for his discomfort, and to verify he was okay when he stopped yelling. When we arrived in ████ paramedics and Farmington fire was just arriving. Medical personal evaluated and gave medical care; the team assisted with removing Abreu's clothing and moving to the new stretcher.

I left as they were loading ABREU in the ambulance so I could gather gear to ride in the ambulance to the hospital. I rode in the front seat of the ambulance to the hospital. Deputies ████ and ████ followed in a DCSO vehicle. Once at the hospital ABREU was taken to a trauma room and was given medical attention. I waited to assist answering any questions I could for medical staff. I left the hospital with Farmington ambulance and waited at the jail for Deputies ████ and ████ to return with inmate ABREU. ABREU returned to the jail at approx 2200. ABREU refused to speak with the Detective from Farmington Pd who was called into investigate the incident. ABREU was escorted to ██████ and was placed on a 15 minute watch.

**SUPPLEMENTAL:** ██████
Report entered for Deputy ██████

On 9/26/2020 I was advised of a CERT operation at the Davis County Jail. Sgt. ████████ informed me that an inmate had barricaded himself inside a cell in Quebec unit. I was informed the inmate had flooded his cell and covered the cell window which prevented anyone from seeing inside.

I responded to the ████ room and met with Sgt. ████████. Also present were Cpl. ████ Deputy ████, Deputy ████ and Deputy ████. Sgt. ████ Sgt. ████ stated inmate Angel Abreu had barricaded himself inside his cell. Sgt. ████ He also had a history of assault. Sgt. ████ also reported that Inmate Abreu was incarcerated for charges of attempted homicide, kidnapping and assault.

████████████████████████████████████████████████████. We then responded to Quebec unit. Upon arrival we walked up stairs to the upper tier. As we approached the cell that Inmate Abreu was being housed, I could see a large amount of water mixed with various items outside the cell. I recognized these items as food and other commissary mixed with water.

INMATE COPY

*Jail Incident Report*                                                                 **Page 5 of 9**

█████████████████████████████████████████████████. Sgt. ███████ clearly and loudly
read instructions for Inmate Abreu to submit to handcuffing. Sgt. ███████ informed Inmate Abreu
that failure to follow instructions would result in the use of force. Inmate Abreu did not follow
the instructions that Sgt. ███████ clearly announced.

Sgt. ███████ then opened the cell door and the team made entry. I could immediately see that
there was a significant amount of blood on Inmates Abreus arms and midsection. As I approached
Inmate Abreu, I observed him to be in a guarded position. From my point of view, I could not see
his hands. I then instructed Inmate Abreu to put his hands in the air. Inmate Abreu did not follow
these instructions.

As the team approached Inmate Abreu he backed up to the bunk in the back of his cell. I then made
contact and secured Inmate Abreus left arm. Cpl. ███ made contact and secured Inmate Abreus right
arm. His legs were secured by Deputies ███████████ Inmate Abreu offered passive
resistance. He was successfully handcuffed behind his back. Inmate Abreu then began yelling that
his stomach hurt. I then observed a large laceration on the abdominal area. I could see the wound
was bleeding and there was a large amount of blood on his abdomen and pelvic area. I then requested
that Sgt. ███████ request a ███████ medical as I felt the laceration was significant and
would necessitate a visit to a trauma center. We then left the cell with inmate Abreu. I did not
observe any weapon in the cell while I was there.

Inmate Abreu was then carried down the stairs and placed on a gurney. Inmate Abreu was then taken
up to ███████ in order to meet EMS in the vehicle sally. During transport I observed Deputy ███████
sitting on inmate Abreus lower legs. At no time was inmate Abreus airway compromised.

Upon arrival to ███████ Inmate Abreu was assessed and treated by DCSO paramedics and Farmington Fire
Department personnel. Inmate Abreu was then transported to Davis Hospital.

████████████████████████████████████████████████████████████████████████████████████████████████

**SUPPLEMENTAL:** ███████
Inmate Abreu was housed in the ███████.
I was in the horseshoe after CERT entered the cell that inmate Abreu was housed in. Nurse ███
████████ called for the radio for me to active EMS. I then told ███████████ to get an ambulance
here for inmate Abreu. At this moment I did not know what injuries or issues inmate Abreu was
having.

Once Nurse ███ and CERT came down the stairs with inmate Abreu I asked for additional information
to give to ███████. Nurse ███ told me he had multiple lacerations on his abdomen and possibly
his wrists. I then relayed that information over the radio to ███████. The cell door was secured by
a CERT member and I assigned Deputy ███████ to document all movement inside QUEBEC and treat
that area like a crime scene. I also told him not to open cell █ until instructed to do so.

Inmate Abreu was taken to Davis Hospital by ambulance with Sergeant ███████, Deputies ███████ and
███████.

Our Administration was notified. Crime Lab was call in for documentation purposes as well as
Farmington PD for an outside agency investigation.
Corporal ███ and I escorted Farmington PD and Deputy ███████ around all areas they requested. I was
informed by Sergeant ███████ when the hospital took scans of inmate Abreu injury they could see
a ring and papers in his anal cavity. They said it wasnt a medical emergency and would pass on its
own. Inmate Abreu was brought back from the hospital. Medical came to ███████ upon his arrival and
did an evaluation on him. Farmington PD was still here and attempted to talk to inmate Abreu at
which time he requested his lawyer for all questioning. Inmate Abreu was then escorted to the ███████
for housing. He was placed on a 15 minute watch for what I believe to be self-inflicted injuries.

█████████████████████████████

**SUPPLEMENTAL:** ███████
**SUBJECT:**          SUPPLEMENTAL REPORT ABREU, Angel (398403) 9/28/2020
**INCIDENT #:**       1281

**INCIDENT TYPE:**             Forced cell entry.


████████████████████████████████████████████████████████

This was the end of my involvement.

**SUPPLEMENTAL:** ████████

At approximately 1730 hours, I received a call at my residence from Sergeant ████████. Sergeant ████████ asked if I was able to respond to duty in order to assist in moving inmate ANGEL ABREU from Quebec housing unit to ███ housing unit. Sergeant ████████ informed me that ABREU was refusing to cooperate and he was also making preparations to fight.

I arrived the DCSO and rendezvoused with other CERT members in the Sergeants office. ████████ ████████ due to ABREU flooding his cell with toilet water, placing material and substances on the floor to create slipping and falling hazards. I finished donning the remainder of my protective gear and waited for other team members to arrive.

Once all CERT members arrived, ████████████████████. Approximately 1910 hours, the team then proceeded to Quebec housing unit and discussed our plan of entry with JOS ████.

The team entered Quebec housing unit and proceeded to cell ███ where ABREU was housed. Sergeant ████████ was our spokesperson and she communicated with ABREU. She requested his compliance and he responded negatively. ████████████████████ and Sergeant ████████ gave the signal to JOS ████ to open the cell, and the team began entry.

Once the cell door opened, I observed approximately 1 inch of standing water on the floor with a great deal of food and unknown debris floating. The words Fuck You were written in a brown substance on the left wall. I also observed ABREU standing next to the bunk, with his hands near his waist (palms up) covered in what appeared to be blood. The blood-like substance had soaked through his shirt and onto his pants. My initial thought is that ABREU had a sharp weapon in his possession.

The team proceeded forward to engage ABREU. He quickly leaned over onto his bunk and began to scream and shout that his stomach was hurting. Restraints were applied to his wrist and ankles. Deputy ████ instructed us to roll ABREU over to discern the location and extent of the injury to ABREU. Deputy ████ asked ABREU, What did you stab yourself with? ABREU shouted, You fucking stabbed me!. Deputy ████████ conveyed to Nurse ████████ that an ambulance was needed. I believe I heard the phrase ████████.

ABREU was carried out of the cell, down the stairs, and placed onto a gurney. He was wheeled down to the ███████ to meet the responding ambulance. While on the way to ████████ ABREU complained about his stomach hurting. The nurses and members of the team tried to keep bandages and direct pressure on ABREUs wound.

The responding ambulance arrived in the vehicle sally at the same time as we arrived from housing with ABREU. The paramedics began their examinations and procedures. I was directed to gather necessary equipment to stay with ABREU while he was at the hospital. Sergeant ████████ rode in the ambulance to the hospital.

Deputy ████████████████████ and followed the ambulance to Davis hospital. Once there, medical professionals attended to ABREU. ABREU was examined via X-ray, MRI, and several other methods. They discovered that ABREU had shoved what appeared to resemble a ring and a plastic bag into his rectum. When questioned by medical professionals, ABREU responded that he placed the items in his anus because he did not want to have them confiscated when he was moved to maximum security housing. The medical attendees said that the items would pass normally, and they were nothing that would cause bodily damage.

Once all examinations were completed, medical personnel cleaned ABREUs wound again, and began to apply staples to seal the wound. They then stated that they would discharge ABREU after approximately 30 minutes of observation. During that observation period, ABREU commented to me that he did not appreciate the fact that I laughed at a joke that was made by the doctor. I asked what joke he was referring to. ABREU said the doctor made a remark about him making bad life decisions, and I laughed at the comment. I then responded to ABREU, Why are you still trying to sneak stuff into the facility? ABREU responded with, I got haters on the outside, I cant help what they send to

INMATE COPY

me.  I said, OK. At that point, I just decided to stop talking to ABREU and began counting down the time for his observation to end.

At approximately 2119 hours, ABREU was discharged from Davis hospital and we returned to the DCSO. Crime scene techs met us in the vehicle sally and took pictures of ABREU and his bandaged wound before bringing him back into the facility.  ABREU was again examined by Nurse ████ prior to being escorted to the ████████ ABREU was placed into the ████████ without incident and given a suicide smock and gown.

End of Report

████████

**SUPPLEMENTAL:** ████████
On 9/26/2020 at approximately 0545 I was asked to respond to the Davis County Jail for CERT team response.
When all of requested CERT Team members arrived to the ████████████ Room Sgt

Sgt. ████████ stated inmate Angel Abreu had barricaded himself inside his cell. Sgt ████████ stated Abreu would be moved from Quebec ████████ Sgt. ████████ also reported that Inmate Abreu was incarcerated for charges of attempted homicide, kidnapping and assault. Sgt. ████████ reported that inmate Abreu also had ████████████████████ in his cell while in Davis County Jail.

████████████████████

We then went to Pod Six and entered Quebec housing unit. Once we got upstairs to Quebec ██ I could see water and food all over the floor in front on Abreu Cell. Sgt ████████ then called out Abreu and stated that he needed to submit to handcuffing or force would be used. Abreu did not respond. Sgt ████████ then opened the door. We made entry into the cell and Abreu moved to the back of the cell. Once Deputy ████ and Cpl ████ secured Abreu arms. Deputy ████████ and I secured his legs. We then applied hand cuffs and Shackles. Once Abreu was restrained he was yelling that his stomach was hurt. Deputy ████ then looked at Abreus stomach and he immediately requested a ████████ I could see blood coming from Abreus stomach. We then needed to move Abreu out of the cell and down to the gurney. As we left the cell I could see there was opened food mixed into the water on the floor. Once we got down the stairs Abreu was placed face down on the gurney.  Abreu then was trying to kick his legs.  I then got on the gurney and placed Abreus legs flat and I put my leg across his calves. The gurney was then pushed to ████. While being pushed up to ████Deputy ████ asked Abreu what he stabbed himself with? Abreu then claimed that we did this to him. We kept pushing the gurney up to ████ The nurses stopped us at ████████ then applied a bandage to Abreus stomach. Abreu was no longer kicking his legs I then got off his claves. Abreu was then pushed on the gurney all the way to the vehicle sally. Davis County Paramedics were waiting. Once we got into the Vehicle Sally Abreu cloths were cut off to check for further wounds.  After his cloths were removed Abreu was moved from our gurney to Farmington Paramedics gurney.  Once Abreu was on Farmingtons gurney Deputy ████ and I were assigned to go to the hospital.
Deputy ████ and I drove to the hospital and we stayed with Abreu while there.
During a CAT scan once of the nurses saw a round object inside of Abreu lower pelvis. The Nurse and I walked out and the Nurse asked Abreu was he had placed up his butt. Abreu told us it was his sliver ring. Abreu also said that he had phone numbers and address wrapped up in plastic.
The nurses stated that he would not need surgery to retrieve it. They said it would pass on its own.
 The Doctor told us that Abreu did not need to stay at the hospital he told us that he wanted to watch Abreus vitals for another thirty minutes. Once he watched the vitals the Hospital released Abreu.  We then returned Abreu back to the Davis County Jail at approximately 21:30.
When we arrived back to the jail we were met with Farmington Detective and Davis County Crime lab. They took photos of Abreu. Once we took Photos of Abreu the Farmington Detective questioned Abreu. Abreu said I want an attorney. The Farmington Detective then said he was done with questions.

INMATE COPY

Cpl ▬ Deputy, ▬ and I and a few other deputies then escorted Abreu to the ▬ up in ▬ Once in the cell Abreu was given a Safety gown. We removed all restraints and exited the cell without further incident.
End of report.

INMATE COPY