Andrew G. Deiss (USB #7184)
David Ferguson (USB #16043)
Corey D. Riley (USB #16935)
DEISS LAW PC
10 West 100 South, Suite 700
Salt Lake City, Utah 84101
(801) 433-0226
deiss@deisslaw.com
dferguson@deisslaw.com
criley@deisslaw.com
   *Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| ANGEL ABREU, Plaintiff, <br><br> v. <br><br> AMY HUTCHISON, CHRISTOPHER RUMMELL, COLE MELDRUM, WILBERT TERRELL, SC LEWIS, T. NIX, JOHN DOES 1-10, Defendants. | **FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS** <br><br> (Prisoner Complaint) <br> Jury Demanded <br><br> Case No. 1:21-cv-00129-RJS <br><br> Judge Robert J. Shelby |

Plaintiff Angel Abreu, by and through undersigned counsel, alleges as follows:

## Introduction

This is a civil action arising from excessive force and the unnecessary rigorous treatment of Angel Abreu, a pretrial detainee at the Davis County jail. On September 26, 2020, while moving Mr. Abreu from his cell block, an officer stabbed Mr. Abreu. His transport to the gurney was mishandled causing him ongoing nerve pain in his wrists. The poorly handled move also aggravated an injury to his shoulder that he still suffers from. The Defendants are sued for violations of Mr. Abreu's rights under the Utah and United States Constitution.

## Jurisdiction, Venue, and Parties

1. This action is brought under 42 U.S.C. § 1983 for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]."

2. Section 1983 allows defendants to be found liable when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia."

3. This Court has jurisdiction to hear the federal civil rights violations in this matter under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3)–(4) and supplemental jurisdiction to hear the common law claims under 28 U.S.C. 1367.

4. Venue is proper under 28 U.S.C. § 1391 because the acts giving rise to this lawsuit occurred in Davis County, Utah.

5. The Plaintiff, Mr. Abreu, at all times relevant has been a resident of Utah.

6. At all times relevant to the Complaint, Defendants were duly sworn and licensed police officer of the Davis County Sheriff's Office acting under color of law and within the scope of their employment. They are sued in their individual capacities.

7. The first names of the officers have been redacted from records provided to plaintiff.

8. John Does I-V are officers who assisted Defendant and who, on information and belief, contributed to Mr. Abreu's damages.

### General Allegations

9. On September 26, 2020, Officer SC Lewis ordered Mr. Abreu to allow cuffs to be placed on him as part of a move to a different housing unit.

10. Mr. Abreu requested that he be allowed to pack up his own property before the move.

11. Officer Lewis denied the request.

12. At around 7:10 pm on September 26, 2020, several officers entered Mr. Abreu's housing unit.

13. Those officers were officers Amy Hutchinson, Christopher Rummell, Wilbert Terrell, Cole Meldrum and other officers whose names are not yet known designated as John Does 1-10.

14. Plaintiff does not yet know the first name of officers T. Nix and SC Lewis; however, these officers were also involved.

15. Prior to the officers' entry, Captain Cole Meldrum gave Sergeant Hutchinson clearance to have a CERT team assist in the movement of Mr. Abreu.

16. The officers who entered the cell were members of the CERT team.

17. In forming the CERT team, Sergeant Hutchison gave the team misleading information.

18. On information and belief, Sergeant Hutchison informed members of the CERT team that Mr. Abreu had a razor in his cell.

19. On information and belief, Sergeant Hutchison informed members of the CERT team that Mr. Abreu had a history of assault.

20. On information and belief, Sergeant Hutchison informed members of the CERT team that Mr. Abreu was refusing to cooperate with commands.

21. On information and belief, Sergeant Hutchison informed members of the CERT team that Mr. Abreu was making preparations to fight.

22. On information and belief, Sergeant Hutchison informed members of the CERT team that Mr. Abreu had barricaded himself in his cell.

23. On information and belief, Sergeant Hutchison informed members of the CERT team that Mr. Abreu had flooded his cell.

24. During the time that the CERT team was being formed and briefed, Mr. Abreu had no idea that officers at the jail were prepared to violently seize him to force his movement.

25. Mr. Abreu was, in fact, intending to comply with the move without use of force.

26. At around 12:00 pm of that day, Mr. Abreu signaled to jail staff that of his interest and readiness to comply with the move.

27. The staff member informed him that she was eating lunch, not to bother her, and if he wanted to follow orders then he should have done so earlier.

28. At about 7:10pm, Mr. Abreu heard Sergeant Hutchison say ". . . how do you comply?" Before Mr. Abreu could process what was said the door to the cell door was opened. CERT members flooded the room.

29. Mr. Abreu backed up to the bunk of the room.

30. Multiple direct orders were made against Mr. Abreu simultaneously and without a clear order of priority: "put your hands in the air," "get down on

your stomach," "show me your hands," "get down on the ground with your chest."

31. This mismatch of orders made it impossible for Mr. Abreu to follow one order without refusing another.

32. Members of the CERT team grabbed Mr. Abreu.

33. Mr. Abreu felt a fierce pain inflicted to his stomach causing him to drop to the ground.

34. Once Mr. Abreu touched the ground with his knees, his head was pinned to the metal frame of the lower bunk.

35. One officer had a knee pressed against the back of Mr. Abreu's head.

36. Other officers latched on to Mr. Abreu's arms, legs, and body.

37. At one point, Mr. Abreu's left arm was pulled in different direction by different officers.

38. While Mr. Abreu was being handled accordingly, he could feel the pain in his stomach become more intense to the point that it felt like a ripping of flesh.

39. Mr. Abreu later learned that this pain was a stab wound.

40. The pain was intense; Mr. Abreu experienced sensations of burning and stinging.

41. On information and belief, the stab was made by scissors.

42. Officers of the CERT team carry scissors to do, among other things, cut clothing.

43. Mr. Abreu was screaming in pain while officers worked to secure his hands and feet with restraints.

44. While cuffing Mr. Abreu, officers of the team were having difficulty double locking the cuffs.

45. It was decided to not double-lock them and continue with the extraction.

46. Due to the stab wound, officers requested an ambulance.

47. Officers picked up Mr. Abreu, lifting him entirely off the ground to carry him to a gurney.

48. Mr. Abreu was carried by the handcuffs and the shackles around his ankles so that the front of his body was facing the ground while being carried.

49. The manner of this carrying put a significant amount of pressure on Mr. Abreu's wrists as the handcuffs dug into them.

50. No first aid was applied to Mr. Abreu as the team carried him to the gurney including no bandaging of the stab wound or pressure put on it.

51. Officers carried Mr. Abreu carelessly, nearly dropping him multiple times.

52. Officers carried him downstairs to get to the gurney, which was left in the middle of the hall rather than left at the bottom of the stairs.

53. When officers placed Mr. Abreu on the gurney they placed him on his stomach and wheeled him towards the exit to where an ambulance was parked.

54. During the time that he was being wheeled, Mr. Abreu screamed from the pain and voiced discomfort with the restraints.

55. One of the officers initially jumped onto the gurney with Mr. Abreu, using her weight to push his ankles to his back.

56. Mr. Abreu's handcuffed hands were between his back and ankles.

57. Because Mr. Abreu's handcuffs were sandwiched between his back and ankles, and because his cuffs were not double-locked, this pushing exacerbated the pressure to his wrists.

58. After repeated yelling about this issue the officer got off the gurney and stopped applying as much pressure on his ankles.

59. During the transit to the ambulance, Mr. Abreu experienced breathing difficulties. Officers had to stop several times to check if Mr. Abreu was still breathing.
60. In placing Mr. Abreu in the ambulance, officers used scissors to cut Mr. Abreu's clothes.
61. Officers placed Mr. Abreu on his back on the ambulance gurney.
62. Because the cuffs were still not double-locked, the pressure from the cuffs was once again exacerbated because Mr. Abreu was forced to lay on them.
63. Mr. Abreu made repeated requests to the officer riding with him in the ambulance (John Doe) to have his cuffs adjusted, expressing that he had the sensation of a loss of circulation and also expressing concern that the loss of feeling would affect his ability to work as a professional chef and barber (which was Mr. Abreu's career path prior to his incarceration).
64. The officer refused to adjust the cuffs.
65. Upon reaching the hospital, Mr. Abreu made multiple requests to officers Terrell and Rummel to adjust the cuffs, expressing the same concerns as before.
66. Officer Terrell refused to adjust Mr. Abreu's cuffs.
67. Officer Rummel refused to adjust Mr. Abreu's cuffs.

68. Upon being evaluated at the hospital, it was determined that Mr. Abreu had suffered a stab wound and multiple laceration to the abdomen.
69. Officers circulated a myth that Mr. Abreu caused his own stabbing by having a razor on his person.
70. An independent investigation in Mr. Abreu's cell revealed no such razor.
71. Moreover, the investigator determined that scratches surrounding the stab wound did not appear to be consistent with a razor.
72. Mr. Abreu has since been diagnosed with paresthesia of his wrists.
73. The manner in which he was cuffed, the lack of double-locking, and the various forms of pressure placed on his wrists are the direct and proximate cause of that paresthesia.
74. Mr. Abreu suffers from the paresthesia to the date of this filing.
75. Mr. Abreu cannot hold a book or write for a long period of time without a pain or numbness rising from his hands to his elbow.
76. Mr. Abreu was given medical orders to have the dressing for his abdomen wound changed daily for the first ten days.
77. Between October 1st, 2020 to October 4th, 2020, Mr. Abreu was denied help in changing the dressing. By October 4th, the wound was bright red with puss. Staff finally cleaned and redressed the wound on October 4th.

78. On October 5, 2020, staples, which were applied when Mr. Abreu was at the hospital, were removed. However, medical staff never applied steri-strips to the wound as ordered by the doctor.

79. The lack of steri-strips caused, or exacerbated, a scar on Mr. Abreu's stomach, left to remind him of being stabbed by a correction's officer.

80. Well before this incident, in or about March of 2020, Mr. Abreu injured his shoulder while at the jail.

81. A physician at the jail, Dr. Wood, recommended that he do physical therapy by doing arm circles.

82. However, Mr. Abreu's shoulder did not improve with the physical therapy and still gives him occasional pain.

83. The incident with the cert team aggravated his shoulder injury for which he has still not received treatment.

### First Cause of Action
### 42 U.S.C. 1983—Fourth Amendment Through Fourteenth Amendment
### Excessive Force

84. Plaintiff incorporates and realleges all proceeding facts.

85. The above captioned officers engaged in, as well as aided and abetted in the engagement in, the excessive treatment of Mr. Abreu.

86. Moreover, Sergeant Hutchison, both as an individual and supervisor over other officers on scene, used, directed, and oversaw the use of force against Mr. Abreu including the cuffing, injuries to his abdomen, and related injuries.

87. The force was intentional, reckless, or at least grossly negligent and in excess of what was reasonable.

88. Due to the excessive force Mr. Abreu has suffered damages at an amount to be proven at trial.

## Second Cause of Action
## Utah Const. art. I, § 14 – Excessive Force

89. Plaintiff incorporates and realleges all proceeding facts.

90. The force was intentional, reckless, or at least grossly negligent and in excess of what was reasonable.

91. Due to the excessive force Mr. Abreu has suffered damages at an amount to be proven at trial.

## Third Cause of Action
## Utah Const. art. I, § 9 – Unnecessary Rigor

92. Plaintiff incorporates and realleges all proceeding facts.

93. Plaintiff has a constitutional right to be treated without unnecessary rigor.

94. Defendants violated that right through the intentional, reckless, or at least grossly negligent conduct in their handling of the entry into Mr. Abreu's cell and the injuries which they caused.

95. Due to the unnecessary rigor Mr. Abreu has suffered damages at an amount to be proven at trial.

## Fourth Cause of Action
## 42 U.S.C. 1983—Eighth Amendment Through Fourteenth Amendment
## Cruel and Unusual Punishment

96. Plaintiff incorporates and realleges all proceeding facts.

97. Defendants showed deliberate indifference in the way in which they handled Mr. Abreu through the entry into his cell and his transport to the hospital.

98. Due to the cruel and unusual punishment Mr. Abreu has suffered damages at an amount to be proven at trial.

### DEMAND FOR JURY TRIAL

Plaintiff requests a trial by jury on all matters so determinable.

### PRAYER FOR RELIEF

Wherefore, plaintiff requests relief the following relief:

a. For judgment against the defendant including damages, actual, non-economic, and punitive, and for pre-judgment interest.

b. For an award of reasonable costs of suit and attorneys' fees as allowed by the rules of the court and statute.

c. For such other and further relief as the Court deems just.

DATED this Tuesday, January 31, 2023

                                                     DEISS LAW, P.C.

                                                     _/s/ David Ferguson_
                                                     Andrew G. Deiss
                                                     David Ferguson
                                                     Corey Riley

                                                     *Attorneys for Plaintiff*